## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **MARIA DE LOS ANGELES CALZADA NAVARRETE,** | § § § | |
| **Plaintiff,** | § § | |
| v. | § § | **3:20-CV-288** |
| **VILLAGE FARMS, L.P.,** | § § | |
| **Defendant**. | § § § | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

### I.     INTRODUCTION

1.1     Defendant Village Farms, L.P. has refused to take measures to protect the health and safety of its workforce during the COVID-19 pandemic that are simple, obvious, and cheap. These measures are required by longstanding federal regulations that are specifically targeted to vulnerable migrant agricultural workers.  The failure to institute these policies exposes Plaintiff and her co-workers to the very health risks the laws were written to prevent.

1.2     Because of her age and underlying medical conditions, Plaintiff is at high risk of serious illness or death if she were to contract COVID-19.

1.3     Upon information and belief, at least five workers employed by Defendant at the Monahans, Texas facility where Plaintiff works contracted COVID-19 in mid-September, 2020.

1.4     Upon information and belief, one of those workers died of her illness.

1.5     Plaintiff brings this action for damages and for declaratory and injunctive relief to vindicate her rights under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801 *et seq.* ("AWPA") and Texas common law.

## II.    JURISDICTION

2.1      This Court has jurisdiction over this action pursuant to:

      a)      28 U.S.C. § 1331 (Federal Question);

      b)      28 U.S.C. § 1337 (Interstate Commerce); and

      c)      29 U.S.C. § 1854(a) (AWPA, 29 U.S.C. §§ 1801 *et seq.*).

2.2      This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a) because it is so related to her federal claims that it forms part of the same case or controversy.

2.3      The Court also has the power to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## III.    VENUE

3.1      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

3.2      Venue is also proper pursuant to 29 U.S.C. § 1854 because this Court has jurisdiction over the parties.

## IV.    PARTIES

4.1      Plaintiff Maria de los Angeles Calzada Navarrete is a migrant agricultural worker with a permanent place of residence in the El Paso, Texas region.

4.2      Defendant Village Farms L.P. is a binational corporation with headquarters in Canada and the United States.

## V.    STATEMENT OF FACTS

### A.  Preliminary Facts

5.1     COVID-19, also known as coronavirus, is a communicable disease and has been declared a global pandemic by the World Health Organization.

5.2     COVID-19 has been declared a public health disaster by the Commissioner of the Texas Department of State Health Services and has been the subject of a disaster proclamation by the Governor of Texas since March 13, 2020.

5.3     Plaintiff is a migrant agricultural farmworker.  Though her permanent place of residence is in the El Paso area, she must migrate from El Paso to other geographic locations to perform agricultural work for Defendant.

5.4     Plaintiff is a lawful permanent resident of the United States of America.

5.5     At all times relevant to this action, Defendant was Plaintiff's "agricultural employer" within the meaning of AWPA, 29 U.S.C. § 1802(2).  Defendant and its agents recruited, solicited, and hired workers, including Plaintiff, to do work for Defendant's Monahans operation. Plaintiff conducts work on Defendant's property. Defendant determines when and how long Plaintiff works. In addition, Defendant supervises workers, including Plaintiff, on a daily basis. Defendant also controls the housing that it provides to Plaintiff.

5.6     At all times relevant in this action, and in the course of Plaintiff's work for Defendant, Plaintiff is engaged in "agricultural employment" within the meaning of AWPA, 29 U.S.C. § 1802(3).

5.7     Plaintiff works and has worked in Defendant's packing shed, where she packages tomatoes and other vegetables in their unmanufactured state, prior to delivery for storage.  Plaintiff has also engaged in other practices, such as cleaning, incidental to this agricultural operation.

5.8      At all times relevant to this action, Defendant "employed" and "employs" Plaintiff within the meaning of AWPA, 29 U.S.C. § 1802(5).  Defendant hired Plaintiff to provide these services and supervises her work on a daily basis.

5.9      Defendant is one of the largest producers, marketers, and distributors of premium-quality, greenhouse-grown fruits and vegetables in North America.  Defendant operates greenhouses in West Texas that grow produce sold in interstate commerce.

5.10     Defendant employs at least 100 workers at its Monahans location.  Most workers employed by Defendant at its Monahans location (including Plaintiff) are hired for either field work–planting, cultivating and harvesting crops—or packing work—weighing, packaging, and preparing unmanufactured agricultural commodities for shipment.

5.11     Defendant's West Texas operations are seasonal and temporary in nature.

5.12     Defendant formerly cultivated, harvested, and packaged multiple crops at its greenhouse facility in Monahans.  As of February 2020 or thereabouts, Defendant only cultivates, harvests, and packages tomatoes at its Monahans facility.

5.13     Defendant's tomato crops are "in production," producing harvestable tomato fruit, for approximately nine to ten months out of the year.  Then, for a period of two to three months each year, these crops go "out of production."  While the tomatoes are out of production, Defendant's employees engage in extensive cleaning work, different in kind from the cultivating, harvesting, and packing work that they perform when the tomatoes are in production.

5.14     Defendant's West Texas operation has a very high turnover of employees.

5.15     Defendant's West Texas operation has seasonal fluctuations in production each year.

### B.  Plaintiff's Age and Health

*Maria de los Angeles Calzada Navarrete v. Village Farms L.P.*
PLAINTIFF'S ORIGINAL COMPLAINT

5.16        Plaintiff is sixty-one years old.  She was born on August 2, 1959.

5.17        Plaintiff is overweight and suffers from high blood pressure and poor blood circulation.  She has had high blood pressure for over ten years.

5.18        Because of Plaintiff's age and underlying health conditions, she faces a substantial risk of serious injury or death if she were to contract COVID-19.

**C.  Defendant's Recruitment of Plaintiff in 2016**

5.19        In 2016, Defendant and its agents recruited workers from the El Paso area, including Plaintiff, to work in its greenhouse and packing shed facilities in Monahans.

5.20        Plaintiff was recruited through the Texas Workforce Commission office in El Paso.

5.21        Defendant's offer to Plaintiff of work for Defendant, coupled with Plaintiff's acceptance of that offer, created a "working arrangement" within the meaning of AWPA, 29 U.S.C. § 1822(c), between Plaintiff and Defendant.

5.22        Under the terms of the job offer to Plaintiff, Plaintiff would be required to leave her permanent home in the El Paso, Texas, area for two-week periods of time to work at Defendant's facilities in Monahans, Texas.  Defendant would provide suitable, safe housing during those two weeks.  At the end of each work period, Plaintiff would return home for two days after which she would have to return to Monahans.

5.23        El Paso is approximately 250 miles from Monahans.  It is not feasible for Plaintiff to return to her permanent home in El Paso at the end of each workday.

5.24        On or about August 2016, Plaintiff began work for Defendant at its Monahans, Texas facilities.

5.25     When Plaintiff began work for Defendant, as part of the onboarding process, she signed a number of papers.  Upon information and belief, one of those papers was a contract setting forth the terms and conditions of Plaintiff's occupancy of housing provided by Defendant.

### D.  Defendant's Use of Domestic Third-Party Contractors

5.26     Throughout the course of Plaintiff's employment, she has been employed directly by Defendant.

5.27     From 2016 through September 2020, Defendant periodically contracted with domestic farm labor contractors to provide it with additional workers.  They performed the same duties as those who are employed directly by Defendant, including the cultivation and harvesting of crops in Defendant's greenhouse and the weighing, packaging, and preparation of those crops for shipment in Defendant's packing shed.

5.28     Two of these contractors were Lencioni Farm Services and Oro Valley Ag Services.

### E.  Defendant's Employment of Workers Through the H-2A Temporary Agricultural Worker Visa Program in 2020

5.29     Sometime prior to September 2020, Defendant hired another farm labor contractor, Fresh Harvest, Inc., to provide Defendant with additional agricultural workers for its greenhouse and packing shed operation in Monahans, for the 2020-2021 tomato production season.

5.30     The tomatoes at Defendant's Monahans facility were out of production during the late summer and early fall of 2020.  While the tomatoes were out of production, Plaintiff and other workers were engaged in cleaning tasks.

5.31     The tomatoes resumed production on or about Monday, October 12, 2020.

5.32     To meet its labor commitments to Defendant for the 2020-2021 tomato production season, Fresh Harvest, Inc. sought to import temporary foreign agricultural workers through what

*Maria de los Angeles Calzada Navarrete v. Village Farms L.P.*
PLAINTIFF'S ORIGINAL COMPLAINT

is known as the H-2A program.  The H-2A program is named for the type of visa, under the Immigration and Nationality Act ("INA"), 8 U.S.C. 1101(a)(15)(H)(ii)(a), which is granted to the foreign workers who are brought in to work temporary, seasonal jobs in agriculture.

5.33    There are two fundamental purposes behind the H-2A program.  First, that U.S. workers rather than foreign workers be employed whenever possible. Second, that the employment of foreign workers will not adversely affect the wages and working conditions of U.S. workers.

5.34    Agricultural employers seeking admission of H-2A workers must first file a temporary employment certification application with the U.S. Department of Labor ("DOL"), pursuant to 20 C.F.R. § 655.130.

5.35    Prior to submitting a temporary labor certification application, the employer must submit a job order on Form ETA-790 to the State Workforce Agency serving the area of intended employment for interstate recruitment.  20 C.F.R. § 655.121(a)(1).

5.36    This application must include a job offer, commonly referred to as a "Clearance Order" or "Job Order," complying with applicable regulations.  *See* 20 C.F.R. § 655.121(a)–(c). The Job Order is used to describe the job during the recruitment of both U.S. workers and foreign workers for whom an H-2A visa is sought by the prospective employer(s).

5.37    Fresh Harvest Inc. submitted a Job Order with H-2A Case Number H-300-20206-733016 via the national Wagner-Peyser job service system.

5.38    An employer of H-2A workers shall provide all H-2A workers and U.S. workers in corresponding employment with a contract with all terms of employment, including the substantive terms required by the regulations governing the H-2A visa program.  20 C.F.R. § 655.122(q).

5.39     If no contract is provided, the required terms of the Clearance Order and the employer's temporary labor certification application shall serve as the work contract.  20 C.F.R. § 655.122(q).

5.40     The terms of the Clearance Order and the substantive regulations governing the H-2A visa program are incorporated into the "working arrangement" within the meaning of AWPA, 29 U.S.C. § 1822(c), between Plaintiff and Defendant.

5.41     Among other terms, the regulations governing the H-2A visa program require that the employer provide free housing to H-2A workers and U.S. workers in corresponding employment who are unable to reasonably return to their permanent place of residence at the end of each day.  20 C.F.R. § 655.122(d)(1).

5.42     Plaintiff is engaged in corresponding employment with workers employed by Fresh Harvest Inc. and Defendant, at Defendant's Monahans facility, pursuant to H-2A visas, under the Job Order with H-2A Case Number H-300-20206-733016 (hereinafter, "the Job Order").

5.43     One of the jobs for which H-2A workers were hired pursuant to the Job Order is "Packhouse worker."  The duties of a "packhouse worker" are described as "[p]ack, sort, and weigh tomatoes . . ."

5.44     On or about September 28, 2020, a group of some sixty or seventy H-2A workers— mostly from Mexico—arrived at Defendant's Monahans facility.  Because the tomatoes were not in production at that time, the H-2A workers all worked in Defendant's greenhouse initially.

5.45     Once tomato production resumed on October 12, 2020, some of the H-2A workers transitioned from the greenhouse to the packing shed.

5.46     Since October 12, 2020, some of the H-2A workers have worked alongside Plaintiff, performing the same tomato weighing and packing duties that Plaintiff performs.

5.47     There are two supervisors in the packing shed–Manuel and Irma.  Manuel and Irma supervise all workers in the packing shed, including Plaintiff, other U.S. workers, and H-2A workers.

**F.  Defendant Provides Workers, Including Plaintiff, With Housing**

5.48     Defendant, directly or by its agent(s), provides housing to its migrant farmworker employees, including Plaintiff, on or around their property at 713 N. Loop 464, Monahans, Texas.

5.49     When Plaintiff is in Monahans, Plaintiff currently resides in a trailer located at 800 N. Main Ave., Monahans, Texas (the "Trailer").  The Trailer has four bedrooms, two bathrooms, and a single, shared kitchen.  There are two beds in each bedroom.  Plaintiff shares the Trailer with five of Defendant's other El Paso-based employees.

5.50     Presently, most of the workers directly employed by Defendant are housed where Plaintiff is, in a group of trailers on N. Main Ave. in Monahans, Texas.  It takes approximately ten minutes to drive from these trailers to Defendant's greenhouse and packing shed facility. Defendant provides a van that takes Plaintiff and the other workers back and forth between the facility and the trailers each day.

5.51     Other workers live in trailers located in other parts of Monahans, Texas.

5.52     Before the arrival of H-2A workers, many El Paso-based workers directly employed by Defendant, as well as many workers employed by Defendant through farm labor contractors, resided in a group of approximately eight trailers, located behind a locked and guarded gate on Defendant's property, and immediately adjacent to the greenhouse and packing shed.

5.53     Since September 28, 2020, or thereabouts, the H-2A workers are housed in the trailers on Defendant's property, adjacent to its facility.  Two of those trailers remain occupied by El Paso-based workers directly employed by Defendant.

*Maria de los Angeles Calzada Navarrete v. Village Farms L.P.*
PLAINTIFF'S ORIGINAL COMPLAINT

5.54     Prior to the arrival of H-2A workers, Defendant charged Plaintiff and other El Paso-based workers for rent every two weeks.

5.55     Since the arrival of the H-2A workers, Defendant no longer charges Plaintiff and other El Paso-based workers for rent.

5.56     At all relevant times, Defendant "controlled" the housing that it provided to Plaintiff, both the mobile home trailers and the land appurtenant, within the meaning of the AWPA, 29 U.S.C. § 1823 and 29 C.F.R. § 500.130(c).

5.57     At all relevant times, Defendant has assigned Plaintiff and its other workers to trailers, maintained exclusive control over all appliances and furnishings in the Trailer and its other trailers, had the right to admit and/or exclude persons from these trailers, had responsibility for maintenance and repair of all appliances and furnishings within the trailers, and had sole responsibility for all rental and utility payments.

5.58     Defendant employs a housekeeper whose duties are to clean the kitchen appliances, bathrooms, and other common areas of Defendant's trailers, including Plaintiff's Trailer.

5.59     One of Defendant's managers, Andrea, is in charge of all off-site and on-site housing. Andrea is the camp superintendent within the meaning of 29 C.F.R. § 1910.142(l)(1).

5.60     Some of the trailers that Defendant provides to its workers are owned by third parties. Plaintiff has never met these third parties. Plaintiff deals exclusively with Defendant and Defendant's agents on all housing related matters.

**G.  Transportation and Travel Between Monahans and El Paso**

5.61     From at least as early as August 2016 through approximately May 2020, Defendant provided free shuttle bus transportation services that allowed its El Paso-based workers to travel between Monahans and El Paso every two weeks.

*Maria de los Angeles Calzada Navarrete v. Village Farms L.P.*
PLAINTIFF'S ORIGINAL COMPLAINT

5.62     During that period, Plaintiff and other El Paso-based workers would usually spend twelve days at a time in Monahans, take the bus to El Paso, spend two days in the El Paso area, and then take the bus back to Monahans for another twelve-day work period.

5.63     Around May 2020, Defendant stopped providing shuttle bus service.  Only four months later, Defendant began employing H-2A workers.

5.64     Plaintiff returns to the El Paso area less frequently than she did prior to May 2020. This is both because she must now pay for her own transportation—Plaintiff does not have a car— and also because she is worried about the travel-associated risks to her health during the COVID-19 pandemic.

5.65     There are approximately thirty to thirty-five workers with permanent homes in the El Paso area who are presently employed by Defendant at its Monahans facility.   Only approximately four of these workers have their own vehicles.

**H.  September 2020 COVID-19 Case at 800 N. Main Ave.**

5.66     Prior to September 12, 2020, Plaintiff had her own bedroom in a Defendant-provided trailer that Plaintiff shared with two other women.  This trailer was located at 111 S. Nancy St., Monahans, Texas.

5.67     On Saturday, September 12, 2020, Plaintiff moved into the four-bedroom, two-bathroom trailer, located at 800 N. Main Ave., Monahans, Texas (the "Trailer").  Plaintiff moved because Defendant's managers told her that she had to.

5.68     Including Plaintiff, a total of five women lived in the Trailer on September 12, 2020.

5.69     The other four women had all been living in the Trailer together when Plaintiff moved in.  The other women's initials are A[1], E, D, and J.G. Plaintiff does not know A, E, or D's last names.

5.70     On Saturday September 12, Plaintiff used the kitchen and bathroom in the Trailer.

5.71     On Saturday September 12, J.G. used the same kitchen and the same bathroom in the Trailer.

5.72     The following day, Sunday September 13, J.G. left the Trailer.

5.73     That same day, A, E, D, and Plaintiff spoke, and the others told Plaintiff that J.G. left and went home to El Paso because she had tested positive for COVID-19.

5.74     Upon information and belief, around September 8 or 9, J.G. started to feel sick with flu-like symptoms.

5.75     Upon information and belief, J.G. informed one of Defendant's managers, who told her to get a COVID-19 test and return to the Trailer to wait for her test results.

5.76     Upon information and belief, J.G. received her positive test result on September 13.

5.77     Upon information and belief, J.G. reported her positive COVID-19 test result to one of Defendant's managers, who told her to return to her home in El Paso.

5.78     On or about September 24, J.G. returned to the same Trailer and to work.

**I.   Other Cases of COVID-19 at Defendant's Monahans Facility in September 2020**

5.79     Upon information and belief, at least four other people employed by Defendant at its Monahans facility fell ill with COVID-19 in early September 2020, around the same time that J.G. became ill.

---

[1] Information about third parties in this Complaint includes what may be considered protected health information. For this reason, Plaintiff refers to individuals by initials in this Complaint.

*Maria de los Angeles Calzada Navarrete v. Village Farms L.P.*
PLAINTIFF'S ORIGINAL COMPLAINT

5.80     Upon information and belief, the initials of those who contracted COVID-19 are M, C, J.R., and T.G.M.  Plaintiff does not know M and C's last names.

5.81     Like Plaintiff, M and C work directly for Defendant.  They work in the greenhouse and live in a trailer on Defendant's property, inside the Monahans facility complex.

5.82     M and C left Monahans around the same time as J.G., on or about September 13, and they returned to work and employer-provided housing around the same time as J.G., on or about September 24.

5.83     T.G.M. and J.R. worked with Plaintiff in the packing shed.

5.84     T.G.M. and J.R. were employed by Defendant through Lencioni Farms, a farm labor contractor.

5.85     T.G.M. and J.R. lived in separate housing at an unknown location in or around Monahans, Texas.

5.86     Upon information and belief, J.R. recovered from her COVID-19 illness.  J.R. no longer works for Defendant at its Monahans facility.

**J.  Death of T.G.M.**

5.87     Upon information and belief, T.G.M. became very ill with COVID-19 and was taken to a hospital for treatment sometime in mid-September.

5.88     Upon information and belief, T.G.M. died of complications from COVID-19 while at the hospital.

**K.  Defendant's Refusal to Adopt Health & Safety Measures**

5.89      None of Defendant's managers or supervisors ever notified Plaintiff—or, upon information and belief, any of Plaintiff's coworkers—of J.G.'s illness or positive COVID-19 test.

Plaintiff only learned about J.G.'s illness through conversations with her colleagues, who purported to learn of it through conversations with J.G.

5.90     None of Defendant's managers or supervisors ever notified Plaintiff that one of the fellow occupants of her Trailer had been in the Trailer, using the shared kitchen and bathroom, at a time when she was symptomatic for COVID-19 and ended up testing positive for COVID-19.

5.91     Upon information and belief, none of Defendant's managers or supervisors ever notified E, D, or A that one of the fellow occupants of their Trailer had been in the Trailer, using the shared kitchen and bathroom, at a time when she was symptomatic for COVID-19 and ended up testing positive for COVID-19.

5.92     None of Defendant's managers or supervisors ever notified Plaintiff of T.G.M., J.R., M, or C's illnesses or positive COVID-19 test results.

5.93     None of Defendant's managers or supervisors ever notified Plaintiff of T.G.M.'s death.

5.94     During the week of September 14, 2020, after finding out that J.G. had COVID-19, Plaintiff spoke to Rebecca, one of Defendant's managers.

5.95     Plaintiff told Rebecca that she had learned that J.G. had tested positive for COVID-19.

5.96     Plaintiff told Rebecca that she was worried because she had been in the same trailer with J.G., and they had used the same bathroom and kitchen.  She told Rebecca that she was particularly worried because of her age and her medical conditions.

5.97     Plaintiff asked Rebecca if Defendant would help her get a test for COVID-19. Specifically, Plaintiff asked if Defendant would pay for the test and provide transportation to the testing site.

*Maria de los Angeles Calzada Navarrete v. Village Farms L.P.*
PLAINTIFF'S ORIGINAL COMPLAINT

5.98      Rebecca told Plaintiff that Defendant would not help her get a COVID-19 test.

5.99      Plaintiff also asked Rebecca if Defendant would provide a separate trailer for workers to stay in while they awaited COVID-19 test results, so that healthy people would not have to share a trailer with people who thought they might have COVID-19.  Rebecca stated that Defendant would not do so.

5.100     Plaintiff also asked if Defendant would provide a separate trailer for workers who were confirmed to have COVID-19.  Rebecca stated that Defendant would not do so, and that its policy was to require workers to return to their permanent residences after receiving a positive test result. Plaintiff told Rebecca that she lives with her daughter and grandchildren, and that she would not expose them to the virus. Rebecca again said that Defendant's policy was that workers who test positive for COVID-19 must leave employer-provided housing.

5.101     Plaintiff also asked Rebecca if Defendant would inform her the next time that one of her coworkers was suspected or confirmed to have COVID-19.  Rebecca refused to do so, citing confidentiality concerns. Plaintiff responded that Defendant would not have to tell her the sick person's name, just that someone was sick.  Rebecca still refused and told Plaintiff to speak to Miriam in the human resources department.

5.102     Neither Plaintiff nor Rebecca took notes or filled out forms during this conversation.  Upon information and belief, no written record exists of this conversation.

5.103     On or about October 1, 2020, Plaintiff spoke with Miriam in the human resources department.  Plaintiff reiterated her request that Defendant notify her when a coworker gets sick or tests positive for COVID-19.  Miriam refused, citing the same confidentiality concerns as Rebecca.

5.104     Plaintiff still lives in the Trailer when she is in Monahans.  So does J.G.  Plaintiff is even more worried for her health now that there are six women total living in the Trailer, using the same bathroom and kitchen.

5.105     To the best of Plaintiff's knowledge, Defendant has implemented rules in response to the pandemic for safety in the greenhouse and packing facilities.  These are:

  a) Workers must wear masks when they take the van between work and employer-provided housing.

  b) Workers have their temperature taken before entering the packing shed and greenhouse each morning.

  c) Workers are required to wear masks while working, although this measure is not always strictly enforced.

  d) Every workday, workers have a meeting with Rebecca, one of Defendant's managers.  Rebecca reads warnings to the workers, including that they should maintain social distance, wear masks, wash their hands frequently, and pay with a credit card instead of cash at stores.

  e) Whenever workers take off the gloves that they wear—and have always worn—to work, they must wash their hands.

  f) Workers eat meals in the cafeteria in two shifts.

  g) The door of the packing shed is left open while workers work.

5.106     However, to the best of Plaintiff's personal knowledge, Defendant has the following policies which adversely affect the health and safety of employees while in Defendant's migrant housing:

a) Defendant will not notify any employees when someone gets sick or tests positive for COVID-19, even those who share living, kitchen, and bathroom facilities with the sick person.

b) Defendant will not help its employees to get a COVID-19 test. They will not pay for testing or provide transportation to testing.

c) Defendant requires workers who have cold and flu-like symptoms to get a COVID-19 test and pay for it themselves.

d) While workers await the results of a COVID-19 test, Defendant permits them to return to trailers that they share with other workers. These trailers have shared kitchens and bathrooms, and sometimes shared bedrooms.

e) If workers test positive for COVID-19, they must leave their trailer and they cannot work for an indeterminate period of time. Eventually, they are allowed to return to work and to live in the trailers.

f) Defendant provides no separate trailers for workers who have COVID-19 symptoms or who test positive for COVID-19.

5.107   The policy of requiring sick workers to return to El Paso violates 29 U.S.C. § 1822(c) by failing to provide free housing as required by 20 C.F.R. § 655.122(d)(1).

5.108   Defendant has failed to ensure that the housing it provides to Plaintiff and the rest of its workforce continuously meets all substantive federal and state health and safety standards.

5.109   The housing that Defendant provides to its migrant farmworker employees, including Plaintiff, does not comply with substantive federal and state safety and health standards applicable to that housing because, *inter alia*:

*Maria de los Angeles Calzada Navarrete v. Village Farms L.P.*
PLAINTIFF'S ORIGINAL COMPLAINT

a) Defendant permits workers with communicable diseases—namely, COVID-19—to use kitchen facilities regularly used by other workers;

b) Defendant does not report known and suspected cases of communicable disease—namely, COVID-19—among workers living in the housing, to local public health authorities; and

c) Defendant fails to provide sanitary facilities, including, but not limited to, sanitary facilities for storing and preparing food and sanitary privies and toilet rooms.

5.110    These housing conditions constitute violations of 29 U.S.C. § 1823(a) because they fail to meet the minimum health and safety standards under 29 C.F.R. § 1910.142(b)(9), (b)(10), (d)(10), (i)(3), (l)(1); and 10 Tex. Admin. Code § 90.4(c)(1).

**L.  Defendant's Treatment of Potentially Ill H-2A Worker in November 2020**

5.111    Upon information and belief, one of the H-2A workers employed in the packing shed was suspected of having COVID-19. Defendant or its agents took him to an offsite location where he received a test for COVID-19.

5.112    Upon information and belief, while he waited for his test results, Defendant or its agents housed him in an employer-provided trailer by himself where he stayed for several days in quarantine until his test came back negative.

5.113    Upon information and belief, Defendant has instituted a quarantine and isolation protocol for suspected COVID-19 cases among its H-2A workers that differs from the quarantine and isolation protocol for suspected COVID-19 cases among its U.S. workers.  This discrepancy constitutes the provision of greater benefits and working conditions to H-2A workers than to U.S. workers in corresponding employment at the same facility.

5.114    The failure to provide no less than the same benefits and working conditions to U.S. workers as offered to H-2A workers constitutes a violation of 29 U.S.C. § 1822(c) because it violates 20 C.F.R. § 655.122(a).

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION: AGRICULTURAL WORKER PROTECTION ACT

6.1    Plaintiff adopts and incorporates by reference each preceding paragraph as if fully set forth herein.

6.2    Defendant intentionally violated Plaintiff's rights under the AWPA by:

a)    Violating, without justification, the terms of the working arrangement made with Plaintiff, in violation of 29 U.S.C. § 1822(c); and

b)    Failing to ensure that housing meets all substantive federal and state health and safety standards, in violation of 29 U.S.C. § 1823(a).

6.3    As a direct consequence of Defendant's violations of Plaintiff's rights under the AWPA, Plaintiff has suffered emotional distress.

6.4    As a direct consequence of Defendant's violations of Plaintiff's rights under the AWPA, Plaintiff is at imminent risk of severe physical injury and death.

6.5    Defendant is liable to Plaintiff under the AWPA for Plaintiff's actual damages, or in the alternative for statutory damages of up to $500 per worker per violation of the AWPA, whichever is greater, pursuant to 29 U.S.C. § 1854(c).

6.6    Plaintiff is also entitled to an injunction under the AWPA, to remedy ongoing violations and prevent further violations, pursuant to 29 U.S.C. § 1854(c).

## SECOND CAUSE OF ACTION: PUBLIC NUISANCE

6.7     Plaintiff adopts and incorporates by reference each preceding paragraph as if fully set forth herein.

6.8     Defendant maintains a condition at its Monahans facility that amounts to an unreasonable interference with a right common to the general public; namely, the right to be free from the dissemination of a dangerous disease.

6.9     Defendant maintains this condition intentionally.

6.10    Alternatively, Defendant maintains this condition negligently.

6.11    Defendant's Monahans facility is a public health nuisance per se under Texas law because it constitutes "an object, place, or condition that is a possible and probable medium of disease transmission to or between humans." Tex. Health & Safety Code § 341.011(12).

6.12    Plaintiff may maintain a tort action for public nuisance because she is at risk of suffering special injury, different in kind from that suffered by other members of the public.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant her the following relief:

a)      enter a preliminary injunction as requested in the separately filed Plaintiff's Motion for Preliminary Injunction, and as stated in the Proposed Order attached thereto;

b)      enter a permanent injunction, ordering Defendant to comply with AWPA and abate the public nuisance;

c)      enter a declaratory judgment that Defendant violated Plaintiff's rights under the AWPA as set forth in the preceding paragraphs;

d)      for each AWPA violation, award Plaintiff statutory damages of $500 per violation or actual damages for each violation, whichever is greater, pursuant to 29 U.S.C. § 1854;

e)      award Plaintiff actual damages as determined by the jury;

*Maria de los Angeles Calzada Navarrete v. Village Farms L.P.*
PLAINTIFF'S ORIGINAL COMPLAINT

f)      award Plaintiff pre-judgment and post-judgment interest, as allowed by law; and

g)      award Plaintiff all other relief as this Court deems just and proper.

Respectfully Submitted,
TEXAS RIOGRANDE LEGAL AID, INC.
1331 Texas Ave.
El Paso, TX 79901
(915) 585-5100

*/s/ Maxwell Dismukes*
Maxwell Dismukes
Texas Bar No. 24116289
Email: mdismukes@trla.org

Christopher Benoit
Texas Bar No. 24068653
Email: cbenoit@trla.org
ATTORNEYS FOR PLAINTIFF